**GENERAL OFFICE PRODUCTS CORP., Plaintiff, Appellant,**

v.

**A.M. CAPEN'S SONS, INC., Defendant, Appellee.**

No. 85–1412.

United States Court of Appeals, First Circuit.

Argued Oct. 11, 1985.

Decided Jan. 6, 1986.

Philip E. Roberts, Hato Rey, P.R., for appellant.

Jay A. Garcia-Gregory with whom Salvador Antonetti, Fiddler, Gonzalez & Rodriguez, and Mario Arroyo-Davila, San Juan, P.R., were on brief for appellee.

Before BOWNES and TORRUELLA, Circuit Judges, and HILL,* Senior District Judge.

BOWNES, Circuit Judge.

General Office Products Corporation (General) appeals from the district court's award of summary judgment in favor of defendant, A.M. Capen's Sons, Inc. (Capen's). General had brought a diversity action based on P.R.Laws Ann. tit. 31, § 5141 (1968) (Article 1802),[1] claiming that Capen's tortiously interfered with an exclusive dealership agreement between General and Gussco Manufacturing Corporation (Gussco), a New York manufacturer of office supply products.

The standard for granting summary judgment is well settled. Under Federal Rule of Civil Procedure 56(c), summary judgment is rendered if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." On appeal from summary judgment, we consider the record and resolve all inferences in the light most favorable to the party appealing the judgment. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *CIA Petrolera Caribe, Inc. v. Arco Caribbean, Inc.*, 754 F.2d 404, 411 (1st Cir.1985).

■ The party who moves for summary judgment bears the burden of showing that there is no genuine dispute concerning facts which are material to the issues raised in the pleadings. *Emery v. Merrimack Valley Wood Products, Inc.*, 701 F.2d 985, 991 (1st Cir.1983). The opposing party cannot defeat summary judgment by mere allegations but must bring " 'sufficient evidence supporting the claimed factual dispute ... to require a jury or judge to resolve the parties' differing versions of the truth at trial.' " *Hahn v. Sargent*, 523 F.2d 461, 464 (1st Cir.1975), *cert. denied*, 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976) (quoting *First National Bank of Arizona v. Cities Service Co., Inc.*, 391 U.S. 253, 289, 88 S.Ct. 1575, 1593, 20 L.Ed.2d 569 (1968)). The burden is on both parties to file necessary materials with the court to support their claims for and against summary judgment. Fed.R.Civ.P. 56(e) and *Stepanischen v. Merchants Despatch Transportation Corp.*, 722 F.2d 922, 929–30 (1st Cir.1983).

## FACTUAL BACKGROUND

General is a retail dealer in office supply products located in Puerto Rico and Capen's is a wholesale dealer in office supply products based in New Jersey and selling in Puerto Rico and other places. Capen's had been selling Gussco products in Puerto Rico since the early 1960's. Garriga Trading Company negotiated an oral exclusive dealership agreement with Gussco in 1978, and in 1979 General acquired Garriga's exclusive dealership rights. Capen's continued to sell Gussco products in Puerto Rico despite Garriga's and General's exclusive dealerships contracts.

Beginning January 1, 1979, Gussco did not take orders for office products from Capen's or from anyone else other than General for direct shipment to Puerto Rico. In 1981, General complained to Gussco that Capen's was selling Gussco products in Puerto Rico and asked that Gussco take

---

* Of the District of California, sitting by designation.

1. § 5141. Obligation when damage caused by fault or negligence

A person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done. Concurrent imprudence of the party aggrieved does not exempt from liability, but entails a reduction of the indemnity—Civil Code, 1930, § 1802; June 9, 1965, No. 28, p. 86, eff. June 9, 1956.

appropriate steps to have Capen's stop doing so. In June, 1982, an officer of Gussco and the president of General agreed that Gussco would no longer fill orders from Capen's when the ultimate destination of the products could be identified as Puerto Rico from the purchase order. Gussco, however, refused to impose any direct territorial restrictions on Capen's sales territory. Capen's continued to sell Gussco products in Puerto Rico. In early 1983, General ended its business dealings with Gussco.

## PROCEDURAL HISTORY

General sued Gussco in June, 1983, for breach of contract under Puerto Rico's Dealers' Contracts Act, P.R.Laws Ann. tit. 10, §§ 278 *et seq.* (Law 75). In September, 1983, General sued Capen's for tortious interference with General's exclusive dealership agreement with Gussco. At the request of Capen's, the United States Magistrate in January, 1984, consolidated the two cases for discovery and pretrial conference purposes.

Capen's moved for summary judgment in February, 1984, claiming that Puerto Rico law did not recognize a cause of action for tortious interference with contract under Article 1802 and, in the alternative, that the plaintiff's claim under such a theory could not prevail. At Capen's request, the following question of law was certified to the Puerto Rico Supreme Court: "Whether a cause of action exists under Article 1802 of the Puerto Rico Civil Code, 31 L.P.R.A. Section 5141, for tortious inference with a contract relation." The court held that Article 1802 included an action for tortious interference with the "contractual relationships of third persons" which could be applied to an exclusive dealership contract.

Capen's again moved for summary judgment on August 23, 1984. It claimed: that General had no cause of action for interference with a contractual relationship; that to recognize such a cause of action in this case would result in sanctioning violations of the antitrust laws and of recognized constitutional rights; and that by stipulating that Capen's sales were negligible it had eliminated damages from the case and could not meet the jurisdictional amount-in-controversy requirement. General objected to Capen's motion for summary judgment but failed to submit crucial interrogatories and the answers to the court.[2] The district court found that the jurisdictional amount of damages was met. It granted the motion for summary judgment on the grounds that "fault" had not been established.

In answering the certified question, the Supreme Court of Puerto Rico had held that "fault must be present" in order to establish a tortious interference with a contractual relationship. The district court defined the meaning of the word "fault":

> Since the concept of fault is crucial in this case, its contours must be clarified and understood before a determination of its existence can be attempted. At the outset we note that, according to civil doctrine, "culpa" (fault) and negligence are not synonymous nor can fault be equated to negligence. *Jimenez v. Pelegrina Espinet,* 112 D.P.R. 700 (1982); *Compania Transatlantica Espanola, S.A. v. Melendez Torres,* 358 F.2d 209 (1st Cir.1966). Fault encompasses more and the evidence to prove it needs to be stronger and different from that of negligence. Indeed, fault is more akin to dolus.... Dolus means malice, bad intention, in addition to mere voluntariness.

*General Office Products Corp. v. A.M. Capen's Son, Inc.,* 607 F.Supp. 1191, 1194 (D.P.R.1985). The district court held that "fault cannot be established without knowledge," *id.,* and that "Capen's did not have effective knowledge of the contract,"

---

2. General propounded interrogatories to Gussco which were answered before the two cases, *General Office Products Corp. v. Gussco Manufacturing, Inc.* and *General Office Products Corp. v. A.M. Capen's Sons, Inc.,* were consolidated for purposes of discovery and pretrial conferences.

General claims to have relied on Gussco to file its answers to interrogatories with the court and to have relied on the consolidation of the cases to allow interrogatories from one case to support General's objection to summary judgment in the other case.

*id.* at 1175. In making the last finding, the court said it could find no evidence in the record that Gussco or anyone else had informed Capen's of the contract between Gussco and General. The court specifically stated: "Our search for certain interrogatories referred to by General in its opposition has been extensive, but to no avail. They have not been included as part of the record in this case." *Id.* at 1195 n. 6.

■ General moved for reconsideration of the judgment pursuant to Federal Rule of Civil Procedure 59(e) and with its motion included copies of the earlier omitted interrogatories and answers. In ruling on the motion for reconsideration, the court stated that it was highly improper for plaintiff to file a copy of the interrogatories and answers so late. It then went on to hold: "Notwithstanding, we considered plaintiff's allegations at page seven of its opposition under the assumption that the answers did exist and, in the light most favorable to plaintiff we concluded that they were not enough to defeat the motion for summary judgment. This still holds true." Since the district court considered the interrogatories and answers despite their late filing, they are part of the record before us.

The issue, therefore, is whether the interrogatories and answers raise a genuine dispute of material fact. The specific question is whether there is anything in the interrogatories and answers from which it could be found that Capen's knew of General's exclusive dealership rights.

■ Four interrogatories and answers are pertinent. In General's first set of interrogatories to Gussco dated July 1, 1983, interrogatory 10 asked:

State if you ever told Julio Garriga Martinez that you would continue to sell to whomever you wanted in Puerto Rico (other than to plaintiff).

The answer was:

No. We were not directly selling to anyone in Puerto Rico. What Mr. Julio ... requested was that we withhold sales to anyone outside of Puerto Rico. As we do not police to whom our different wholesalers in turn sell, we responded

that we were only willing to try to protect Mr. Garriga by not accepting orders from A.M. Capens that had shipping marks indicating as ultimate destination Puerto Rico. This conversation took place between Mr. Garriga and Stan Thomashow in June, 1982 ... Since the time we have had no orders from Capens so marked.

Interrogatory 11 of the first set asked:

State if you ever agreed to reject any order received from A.M. Capens for delivery to Puerto Rico.

The answer was:

Yes, when the order could be so identified.

We think the answers to these interrogatories raised an inference that Gussco had told Capen's something about the arrangement it had with General.

In General's second set of interrogatories to Gussco dated September 13, 1983, interrogatory # 9 asked:

9. If as you claim in your responses to plaintiff's first interrogatories that you cannot control to whom your wholesalers sell your product line, state the justification you relied on to refuse to sell to A.M. Capen's any order it placed with you wherein the order appeared to be destined for Puerto Rico.

Gussco answered:

9. We did not refuse to sell to A.M. Capens. We were trying our very best to accommodate the plaintiff. We were hopeful that A.M. Capens would understand and accomodate [*sic*] us in this one issue.

The answer could imply that Gussco had communicated with Capen's concerning Gussco's exclusive dealership agreement with General—Gussco hopes that Capen's will "understand" and "accomodate [*sic*] us in this one issue." The one issue could be that Gussco would not fill orders from Capen's destined for Puerto Rico. It could also be the General-Gussco agreement. Indulging all inferences in favor of the party opposing summary judgment, Gussco's answer could mean that Capen's had knowl-

edge of the agreement but was continuing to sell in Puerto Rico anyway.

In General's third set of interrogatories to Gussco, dated September 14, 1983, the fifth interrogatory asked:

5. Did you ever tell Capens that your distributor in Puerto Rico was disturbed at Capens re-selling your product to an entity in Puerto Rico? If your response is in the affirmative, state the following:

    a) the date you so informed Capens;

    b) the gist of what was told to Capens;

    c) the response of Capens.

Gussco responded:

5. Yes. In an effort to accommodate plaintiff, we mentioned this to Capens in a casual conversation in October, 1982, where no response was received.

Resolving all inferences in favor of General, Gussco's answer suggests that Capen's knew of the exclusive contract between Gussco and General.

■ Considering all four interrogatories and answers, we think they raised a material issue as to whether Capen's knew of General's exclusive dealership with Gussco.[3] The question is whether this is sufficient to avoid summary judgment. The district court held:

Principles of fair play require an owner of an exclusive distributorship, upon discovering that a third party is interfering with its contractual interests, to provide said party clear and sufficient information of the relationship between the principals and of the possible consequences of any further hindrance under Law 75. If this is not done the distributor cannot then claim, barring other circumstances, that said party tortiously and with fault interfered with its contractual relationship.

607 F.Supp. at 1195.

If this is the legal standard that controls, then the plaintiff has not met it. Although the interrogatories and answers raise a material issue of fact as to Capen's knowledge of the exclusive dealership, it cannot be inferred from them that Gussco or General provided Capen's with "clear and sufficient information of the relationship between the principals and of the possible consequences of any further hinderance under Law 75." With due respect, however, and acknowledging the district court's expertise in the law of Puerto Rico, we cannot find anything in the opinion of the Supreme Court of Puerto Rico imposing this additional requirement. After examining the Spanish and French Civil Codes on the law of tortious interference with the contractual relations of third persons, the Supreme Court of Puerto Rico held:

In the light of the foregoing, we hold that art. 1802 of the Puerto Rico Civil Code allows, like its French and Spanish counterparts, the action for tortious interference with the contractual relations of third persons. The action applies to exclusive distributorships such as the one at bar. There are situations where this is not so, but this happens mainly when high ranking public interests prevent it. This is not the appropriate case to discuss the exceptions to the rule, or related concepts, such as the contract in prejudice of a third person (*contrato en dano de tercero*). Let us rather point out the constitutive elements of the action, according to the authorities cited.

In the first place, there must be a contract with which a third person interferes. If what is affected is an exception or a profitable financial relationship where there is no contract, the action does not lie, although it is possible that liability be incurred under other judicial principles.

In the second place, fault must be present. We adopt the opinion of the majority according to which the prejudiced party need only show or present facts allowing the court to infer that the third person has acted tortiously, with knowledge of the contract's existence.

---

**3.** We have considered the deposition testimony of Gussco vice-president Stanley Thomashow on which plaintiff also relies. We agree with the district court that it is too ambiguous to support any inference of knowledge by Capen's of the exclusive dealership.

The third element is that there must be a damage to the plaintiff. The fourth element is that said damage must be a consequence of the tortious acts of the third person. The necessary causal nexus is that between the act of the third person and its effect on the prejudiced party. That the prejudiced party's co-contractor has had the intention to breach the contract, is irrelevant to this end. It suffices that the third person has provoked or contributed to the breach. In case of concurrent faults, the liability is solidary.

*General Office Products Corp. v. A.M. Capen's Sons, Inc.*, No. 0–84–278, Translation Opinion at 6 & 7 (Puerto Rico June 29, 1984).

Our reading of that opinion leads us to conclude, differently from the district court, that there are no additional requirements under Puerto Rican law other than the four elements specifically enumerated by the Supreme Court of Puerto Rico to which we make reference above. We are compelled to hold that the district court's "principles of fair play" requirement is not in accord with Puerto Rico law. We hold that the interrogatories and answers have raised a genuine issue of material fact that must be determined by a trial on the merits.

It is not clear whether the district court ruled on Capen's claim that the exclusive contract was illegal under the antitrust laws and the Constitution. On remand, the district court should address these issues directly.

*Reversed and Remanded.* Costs to appellant.