**R–G FINANCIAL CORPORATION, R–G Mortgage Corporation, R–G Premier Bank of Puerto Rico, Plaintiffs**

v.

**Pedro VERGARA–NUÑEZ, John Doe, Jane Doe, et al as unknown heirs of María T. Viera–Clemente, Defendants.**

No. CIV. 03–1841 CCC.

United States District Court,
D. Puerto Rico.

March 16, 2005.

Sonia B. Alfaro–de–la–Vega, for Plaintiff.

Juan M. Suárez–Cobo, San Juan, PR, for Defendant.

## ORDER

CEREZO, District Judge.

The action, for declaratory judgment and/or modification of rescission under the Truth in Lending Act (TILA) is before us on Plaintiffs' Motion for Judgment on the Pleadings (docket entry 23). Defendants opposed the motion (docket entry 26)[1] and filed a counterclaim (docket entry 16). The facts that give rise to these motions are as follows:

The plaintiffs are three related companies: R–G Financial Corporation (Financial), R–G Mortgage Corporation (Mortgage) and R–G Premier of Puerto Rico (Premier) (or collectively "R–G"). On February 9, 2001 the defendant, Pedro Vergara–Nuñez and his wife María T. Viera–Clemente [2] (Vergara) entered into loan transaction with Premier guaranteed by defendants' home. The loan was a consumer credit transaction for purposes of the Truth in Lending Act (TILA), 15 U.S.C. § 1391(b). The TILA and Home Ownership Equity Protection Act disclosures were delivered to defendants on the

---

1. The Motion for Leave to File Spanish language documents (docket entry 25) is MOOT. The filing of the translations (docket entry 28) is NOTED.

2. Viera–Clemente is now deceased and her unknown heirs have replaced her as defendants.

same date, prior to closing of the transaction on February 9, 2001. The amount of the settlement charges for the loan were disclosed and were then financed as part of the loan transaction. Defendants made five loan payments, through August, 2001, and then failed to pay any others.

Thereafter, Mortgage filed a collection of money and mortgage foreclosure action against defendants in the Puerto Rico Court of First Instance, Superior Court of Carolina, *R–G Mortgage Corp. v. Pedro Vegara*, Cv. No. FDC2002–0496(404d). The defendants failed to answer the complaint, their default was entered, and on May 29, 2002, the Superior Court entered judgment ordering foreclosure of the mortgage. In November, 2002 defendants filed for bankruptcy, but the case was dismissed on March 3, 2003. The Superior Court then scheduled the judicial public sale of the property for September 5, 2003.

Meanwhile, defendants sent a letter-notice of rescission to Financial on July 15, 2003, allegedly received on July 18, 2003 contending that they had not been provided with accurate material disclosure mandated by TILA §§ 1638 and 1639(a), in that the lender had failed to deduct prepaid finance charges from the amount of the loan principal in calculating the amount financed for TILA purposes. They also alleged that certain disclosures were not delivered three days in advance of the closing, as required by law. Therefore, defendants were rescinding the loan.

Vergara–Nuñez' notice failed to offer timely the amounts received or to express their capacity to return the money loaned, the plaintiffs filed this action for declaratory judgment in lieu of its creditor's response to the notice of rescission. It requests that we declare that the matters are collaterally estopped by the Superior Court judgment, that the TILA claims time-barred, and/or that the Court modify the procedure for rescission.

Defendants, in their opposition to the motion for judgment on the pleadings, note that throughout their complaint and dispositive motion, plaintiffs refer to themselves as a collective entity—"R–G"—instead of three separate corporations. They contend that the loan originated with Premier, that the foreclosure case in Superior Court was filed by Mortgage, which never acquired the rights to the loan, and, therefore, the judgment was obtained by fraud and is invalid. They believe that *res judicata* does not apply because there is no identity of parties. They also argue that their notice for rescission is not time-barred and that plaintiffs' failure to timely respond to the rescission notice gives rise to a separate damage claim, distinct from the disclosure violation.

Defendants' notice of rescission and their counterclaim in this suit clearly represent an attempt to avoid the consequences of a default judgement entered against them. As in the case of *Arecibo Radio Corporation v. Commonwealth of Puerto Rico*, 825 F.2d 589 (1st Cir., 1987), defendants chose not to defend the foreclosure action and allowed a default judgment to be brought against them. In an attempt to avoid the consequences of their inaction, they would have us find that the Superior Court judgment is void, that there was fraud on that court, and that there is no identity of parties among the defendants. As we have stated before:

On the identity between parties, the Civil Code provides:

> It is understood that there is identity of persons whenever the litigants of the second suit are legal representatives of those who litigated in the preceding suit, or when they are jointly bound with them or by relations established by the indivisibility of

prestations among those having a right to demand them, or the obligation to satisfy the same. *P.R.Laws Ann. Title 31 Section 3343.* Manresa, commenting on the Spanish Civil Code's equivalent article and on the Supreme Court of Spain's interpretation of this requirement, states that in practice the identity requirement is met if the actions are equal on all other aspects and the claimants base their claims on the same title or endowment as the previous party. In *Heirs of Zayas–Berrios v. Berrios,* 90 PRR 537, 1964 WL 14300 (1964), the supreme Court went beyond the pleadings of a previous proceeding to finding that the defendant in that proceeding was a nominal party and that the action was really being defended on behalf of another unnamed defendant which it found was the one now before the court, thus barring the relitigation of the claims against him. *Stitzer v. University of Puerto Rico,* 617 F.Supp. 1246, 1257 (D.Puerto Rico 1985).

The defendants do not expressly challenge the privity among the parties, although we can infer it from their emphasis on the different corporate identifies. The facts of this case are analogous to those in *Crutchfield v. Countrywide Home Loans,* 389 F.3d 1144 (10th Cir.2004). In that case *Crutchfield* contended that the lack of privity between MERS, the entity that brought the foreclosure in the state court and Countrywide, the lien holder, prevented preclusion of his TILA claim for rescission against Countrywide. The court found that his right to rescind the mortgage under TILA was inextricably inter-twined[3] with the state court judgment in the foreclosure proceedings on the property, and thus was barred under the *Rooker–Feldman* doctrine. In essence, *Crutchfield* was asking the federal court to undo the effect of a state court judgment.

An extensive discussion of the *Rooker–Feldman* doctrine can be found in *Stillman v. Devita, II,* 120 Fed.Appx. 272, 274 (10th Cir.2005):

> The *Rooker–Feldman* doctrine is the product of two Supreme Court cases holding that lower federal courts are without subject matter jurisdiction to hear (1) claims actually decided by a state court, *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 415–16, 44 S.Ct. 149, 68 L.Ed. 362 (1923), or (2) claims that are "inextricably intertwined" with a state court judgment. *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 483 n. 16, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983) ... the *Rooker–Feldman* doctrine is the negative inference of 28 U.S.C. 1257(a):[4] if appellate review of state court judgments is vested in the United States Supreme Court, it follows that review is not vested in lower federal courts.

Quoting *Crutchfield, supra,* at 1145, the *Stillman* court went on to note:

> By confining state cases to state appellate systems, the *Rooker–Feldman* doctrine preserves the state plaintiff's forum choice. More importantly, it respects the values of federalism implicit in our parallel system of independent state and federal courts, with the United States Supreme Court at the apex of both—a structure established by the first Judiciary Act of 1789 and adhered

---

3. Where a plaintiff seeks a remedy that would disrupt or undo a state court judgment, the federal claim is inextricably intertwined with the state court judgment. *Crutchfield, supra,* at 1147.

4. Section 1257(a) provides for Supreme Court review of certain final judgments rendered by the highest court of a state.

**4**

to ever since. The *Rooker–Feldman* doctrine prohibits "a party losing in state court from seeking what in substance would be an appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights".

(Citations omitted.) Therefore, we have no jurisdiction to address the validity of the foreclosure proceedings in this action.

With regard to Vergara's notice of rescission and counterclaim under TILA, plaintiffs contend that they had to have been raised in the foreclosure action. Puerto Rico Rule of Civil Procedure 11.1, governing compulsory counterclaims, provides in pertinent part:

A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction.

(Official translation.) The preclusion covers those issues actually litigated and adjudicated and extends to those issues which could have been litigated and adjudicated in the previous suit. *Del Carmen Tirado v. Department of Education*, 296 F.Supp.2d. 127, 130 (D.Puerto Rico, 2003). *Compare, Eubanks v. Liberty Mortgage Banking Ltd.*, 976 F.Supp. 171, 173 (E.D.N.Y.1997) (Because New York's counterclaim rule is permissive, res judicata generally will not bar counterclaims that could have been brought in the prior action.)

Defendants' TILA claims arise out of the same transaction that engendered the foreclosure proceedings; they should have been raised at that time. We are, there-

fore, precluded from addressing any of Vergara's claims under TILA, as well as from revisiting the foreclosure of the mortgage. *See, Albano v. Norwest Financial Hawaii, Inc.*, 244 F.3d 1061 (9th Cir.2001).

For the above-stated reasons, the Motion for Judgment on the Pleadings (docket entry 23) is GRANTED, and judgment will enter in favor of the plaintiffs. The counterclaim is hereby DISMISSED.

The court finds that the defendants' rescission notice that engendered this suit as well as their counterclaim were entirely frivolous. All issues and defenses that raised here could have been litigated in the Superior Court of Puerto Rico, had they chosen to do so. They did not even appear in that case. The filing of this suit was merely a subterfuge to delay the inevitable execution of the judgment of foreclosure. Defendants and their attorney, therefore, are ORDERED TO SHOW CAUSE, within 10 calendar days after notice, why they should not be sanctioned pursuant to Fed. R.Civ.P. 11(c).

SO ORDERED.

**JUDGMENT**

The Court having granted plaintiffs R–G Premier Bank of Puerto Rico, R–G Financial Corporation and R–G Mortgage Corporation's Motion for Judgment on the Pleadings (docket entry 23), the Court hereby DECLARES:

Defendants Pedro Vergara–Nuñez and the heirs of María T. Viera–Clemente, if any, are estopped from re-litigating all issues adjudicated by the Court of First Instance of the Commonwealth of Puerto Rico, Carolina Part, in the foreclosure proceeding of the mortgage guaranteeing Loan Number 000195791 by operation of the principle of *res judicata.* Defendants are also collaterally estopped from asserting any claims under the Truth in Lending

Act, 15 U.S.C. § 1391(b), arising from the same loan transaction.

The counterclaim (docket entry 16) is DISMISSED.

SO ORDERED AND ADJUDGED.